UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Red Moore & Son Power Line Construction LLC d/b/a RMS Power Line, et al.,

    Plaintiffs

v.

Tri-Technic, Inc.,

    Defendant

2:15-cv-00181-JAD-PAL

**Order Denying Motion for Partial Summary Judgment**

[ECF No. 21]

    In this diversity action, Red Moore & Son Power Line Construction LLC d/b/a/ RMS Power Line ("RMS"), American Heavy Equipment Rentals, LLC, and Bill Jones Equipment Company sue Tri-Technic, Inc. for breach of contract and related claims.[1]  RMS now moves for summary judgment on its breach-of-contract claim, arguing that it is entitled to $229,945.99 as a matter of law.[2]  Because RMS has not carried its burden to show a breach and the issue of damages is also genuinely disputed, I deny RMS's motion and refer the parties to the magistrate judge for a settlement conference.[3]

## Background

    In September 2013, Tri-Technic entered into a prime construction contract with Western Area Power Administration Desert Southwest region ("Western") for a project known as the "NERC Mitigation Year 1" project.[4]  NERC was a two-phase project, with the first phase to be completed in Flagstaff, Arizona, and the second half to be completed in Boulder City, Nevada.[5]  Tri-Technic and RMS then entered into a fixed subcontract under which RMS agreed to complete the transmission-

---

[1] ECF No. 1.

[2] ECF No. 21.

[3] I find this motion suitable for disposition without oral argument.  L.R. 78-2.

[4] ECF No. 1-1.

[5] ECF No. 21-1 at 11.

conductor and structure-replacement portion of the NERC project for $502,069, including furnishing "all labor, materials, tools, equipment and other incidentals required to perform" that work.[6] The subcontract includes an integration clause and requires all changes to the agreement to be made in a writing signed by both parties.[7] The subcontract also gives Tri-Technic several remedies—including termination of the agreement—if RMS materially breached the agreement provided that Tri-Technic first notify RMS of the breach in writing and give RMS 48 hours to cure the breach.[8] And it states that any waiver by Tri-Technic of any breach by RMS does not constitute a waiver of any other or future breach.[9]

Shortly before the NERC project was to begin, RMS's owner Red Moore became ill.[10] According to Tri-Technic project manager Mike Ryberg, the parties verbally agreed to bring in another subcontractor, Grays Power Supply, to assist in performing RMS's portion of the work and that Tri-Technic would add RMS employees to its payroll and facilitate payment to them.[11] According to Ryberg, the parties agreed to this modification to prevent Tri-Technic from defaulting on the prime contract and to prevent RMS from defaulting on the subcontract.[12]

The project was eventually completed, and Tri-Technic was paid in full under the prime contract for both phases.[13] Tri-Technic never provided RMS any written notices to cure, made any other formal or written complaints about RMS's performance, or informed RMS of an intent to

---

[6] ECF No. 1-1 at 3.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.* at 3.

[10] ECF No. 21-1 at 14, 21-2 at 18.

[11] ECF No. 21-1 at 17.

[12] *Id.* at 19.

[13] *Id.* at 13; ECF No. 21-2 at 13.

withhold payment.[14]  It is unclear from the summary-judgment papers what payments Tri-Technic or the bonding company made to RMS.

RMS alleges that it fully performed all contractual duties and that Tri-Technic breached the contract by failing to pay it the full contract price of $502,069,[15] of which RMS claims Tri-Technic still owes $229,945.99.[16]  Tri-Technic responds[17] that RMS is not entitled to summary judgment because it did not fulfill all conditions precedent to payment: Tri-Technic was forced to bring in Grays Power to perform part of RMS's scope of the work and to put RMS employees on its own payroll—neither of which were contemplated under the original contract.[18]

**A.    Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[20]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[21]

---

[14] ECF No. 21-1 at 28; ECF No. 21-2 at 40–41.

[15] ECF No. 1 at 5.

[16] ECF No. 21.

[17] In its response, Tri-Technic also argues that it should be entitled to summary judgment on RMS's breach of contract claim.  ECF No. 22 at 3.  I decline to treat Tri-Technic's response to RMS's motion as a countermotion for summary judgment because it is not properly captioned and Tri-Technic's summary-judgment argument consists of only two short paragraphs at the very end of its motion and contains almost no analysis.

[18] ECF No. 22 at 11.

[19] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[20] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[21] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

1    If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[22]  The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[23]

**B.    RMS is not entitled to summary judgment on its breach-of-contract claim.**

To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.[24]  As the Nevada Supreme Court has explained, the plaintiff generally has the burden of pleading and proving that it fulfilled conditions precedent in order to recover on a breach-of-contract claim.[25]  "[A]bsent some countervailing reason, contracts will be construed from the written language and enforced as written."[26]

RMS is not entitled to summary judgment on its breach-of-contract claim because whether it fulfilled its contractual obligations—and is thus entitled to payment of the full contract price—is genuinely disputed.  The deposition testimony indicates that RMS did not supply "all labor, materials, tools, equipment and other incidentals required to perform" its portion of the NERC project as required by the express language of the subcontract.  Ryberg testified that, because Red Moore became ill, the parties agreed to bring in another subcontractor to help complete RMS's portion of the work and that Tri-Technic had to add RMS employees to its own payroll and that Tri-

---

[22] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[23] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[24] *Richardson v. Jones*, 1 Nev. 405 (1865).

[25] *Clark Cty School Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95, n. 21 (Nev. 2007) (citing NRCP 9(c) and *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 20–23 (1st Cir. 2001).

[26] *Ellison v. California State Auto. Ass'n*, 797 P.2d 975 (Nev. 1990).

Technic employees also had to assist with RMS's scope of the work.[27]  RMS has not shown that it fulfilled its contractual obligations simply because Tri-Technic did not comply with the written-notice breach procedures and formally terminate the agreement at that time.  Indeed, the subcontract expressly states that any waiver by Tri-Technic of a breach of the subcontract does not constitute a waiver of any other or future breach of that contract.[28]

Even if RMS had demonstrated that it is entitled to summary-judgment on the issue of liability, the issue of damages remains genuinely disputed.  Without citing to the record, RMS states several times that Tri-Technic has "admitted" that it has not paid RMS in full.[29]  RMS also argues—without citing any evidence—that Tri-Technic admits that it has paid RMS and its subcontractors only $272,123.01 out of the contract price.  The Tri-Technic prepared spreadsheet RMS offers records $314,609.81 in payments to RMS and RMS subcontractors, not $ 272.123.01, and the record does not reflect how RMS arrived at this figure.[30]  The bottom of the spreadsheet states that Tri-Technic estimates that it "may" still owe RMS $48,782.21, but it is unclear from the deposition testimony when this spreadsheet was prepared.  Simply put, I am unable to tell how RMS arrived at the $272,123.01 figure, an amount it believes entitles it to $229,945.99 (derived from the full contract price of $502,069–$272,123.01).  I decline to comb through the record to find where Tri-Technic or its agents allegedly made these admissions.[31]

---

[27] ECF No. 21-1 at 17.

[28] ECF No. 1-1 at 3.

[29] ECF No. 21 at 7–8.

[30] ECF No. 21-3.

[31]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that **RMS's motion for partial summary judgment [ECF No. 21] is DENIED.**

IT IS FURTHER ORDERED that this case is referred to the magistrate judge for a settlement conference.

Dated August 15, 2016

_____
Jennifer A. Dorsey
United States District Judge